# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1190

_____

Jason Powell,

*Plaintiff - Appellant*,

v.

Roxann Ryan, in her official capacity as Commissioner of Iowa Department of Public Safety[1]; Gary Slater, in his official capacity as Fair Secretary/Manager/CEO of Iowa State Fair; D. Smith, individually and in his official capacity as Officer for Iowa State Fair Patrol; Michael Cunningham, individually and in his official capacity as Trooper for the Iowa State Patrol,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: September 20, 2016
Filed: May 2, 2017

_____

Before COLLOTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

_____

[1]Commissioner Ryan is substituted for her predecessor under Federal Rule of Appellate Procedure 43(c)(2).

COLLOTON, Circuit Judge.

This is Jason Powell's second appeal concerning his efforts to gain an injunction against the enforcement of rules of the Iowa State Fair that forbid impeding traffic and bringing signs attached to poles and sticks to the Fair. In the first appeal, this court ruled that Powell was entitled to no more than certain narrow relief granted by the district court, because he failed to demonstrate a likelihood of success on the merits of his First Amendment claim or a threat of irreparable harm. *Powell v. Noble*, 798 F.3d 690 (8th Cir. 2015). The court remanded, however, for consideration of whether Powell was entitled to additional relief based on his claim under the Due Process Clause. On remand, the district court[2] denied Powell's request for a broader preliminary injunction, and Powell appeals. Because Powell is unlikely to succeed on his due process claim and has failed to show irreparable harm, we affirm.

I.

The Iowa State Fair is an eleven-day annual event on the Iowa State Fairgrounds that attracts more than one million visitors per year. The 435-acre Fairgrounds are owned by the State of Iowa and managed by the Iowa State Fair Board. During the 2013 Fair, Powell went to a sidewalk outside an entrance to the Fairgrounds to share a religious message. Powell held a sign attached to a pole and engaged in conversations with passersby. Patrol officers working for the Fair approached Powell and told him that he must leave the sidewalk, but that he could continue his activity across the street. Powell alleges that he asked why he must leave, and that the officers told him that he would be arrested if he did not depart. Powell crossed to the other side of the street, but left shortly thereafter.

---

[2]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

-2-

The following day, Powell returned to the Fair and stood on a sidewalk outside a different entrance to the Fairgrounds while holding a sign attached to an aluminum pole. A patrol officer again told Powell that he must leave. An Iowa State Trooper then arrived and escorted Powell to a booking area inside the Fairgrounds. The trooper issued Powell an ejection notice. The notice said that Powell was ejected for the duration of the 2013 State Fair and warned him that he would be charged with criminal trespassing, a simple misdemeanor, if he returned to the Fairgrounds during the 2013 Fair.

Powell sued the Iowa Commissioner of Public Safety, the Chief Executive Officer of the Iowa State Fair, a State Fair patrol officer, and the state trooper, alleging that they violated his rights under the First Amendment and the Due Process Clause. He sought injunctive and declaratory relief and nominal damages. The officials responded that they acted based on two unwritten Fair rules governing the activities of visitors: (1) "the activity must not impede the flow of people into, out of, or within the Fairgrounds," and (2) "if a visitor brings a sign, the sign must not be attached to any kind of pole or stick due to safety concerns with the pole or stick being used as a weapon." In his reply brief, Powell argued that these unwritten rules are unconstitutionally vague. The district court granted narrow preliminary injunctive relief as to one area near the Fairgrounds where the officials conceded that Powell's activities would not likely impede traffic, but otherwise denied relief.

Powell appealed the denial of broader relief, and this court affirmed in part but remanded for further proceedings. The court concluded that Powell was unlikely to succeed on his First Amendment claim, because the area immediately outside the Fairgrounds was a limited public forum, and the restrictions on Powell's speech were reasonable and viewpoint-neutral. *Powell*, 798 F.3d at 700-02. The court said, however, that Powell's separate allegation that the rules violated his due process rights "still implicates speech that both parties agree is protected," and remanded the case "for consideration of whether Powell is entitled to preliminary injunctive relief

-3-

based on his due process claim." *Id.* at 703-04.  On remand, the district court denied the injunction, concluding that Powell was unlikely to prevail on his due process claim and had failed to demonstrate irreparable harm.

A district court considering injunctive relief evaluates the movant's likelihood of success on the merits, the threat of irreparable harm to the movant, the balance of the equities between the parties, and whether an injunction is in the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). We review the district court's denial of a preliminary injunction for abuse of discretion.  *Powell*, 798 F.3d at 697.

## II.

To justify an injunction in this context, Powell must establish a reasonable probability of success on his claim.  *Id*. at 698.  On remand, the district court concluded that Powell was unlikely to succeed on the merits of his due process claim, because the disputed rules did not have a chilling effect on Powell's free speech rights.  Powell responds that the district court simply relied on this court's conclusion about his First Amendment claim and failed to analyze independently whether the Fair rules were unconstitutionally vague under the Due Process Clause.

Powell's complaint is that the unwritten Fair rules are too vague to provide fair notice of what conduct is prohibited and to avoid arbitrary and discriminatory enforcement.  *See Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).  This court ruled in the first appeal that Powell is unlikely to succeed on a First Amendment claim, because the rules are reasonable restrictions on the time, place, and manner of speech.  Given that speech covered by the Fair's rules is properly restricted, Powell's notice claim must be that the rules threaten to chill speech that falls outside the scope of the rules.  In other words, Powell contends that the alleged vagueness of the rules leads Fairgoers to "steer far wider of the unlawful zone . . . than if the boundaries of

-4-

the forbidden areas were clearly marked." *Id*. at 109 (internal quotations omitted). We see no likelihood of success on this claim.

There is some doubt whether the vagueness doctrine applies with much force to rules of the Fair. The leading precedents concerning this doctrine involve penal statutes that chill speech with the threat of criminal punishment. *See Kolender v. Lawson*, 461 U.S. 352, 358-59 (1983); *Smith v. Goguen*, 415 U.S. 566, 572-74 (1974). Where potential sanctions are less severe, as in the case of civil penalties, due process requires less precision. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982). The rules of the State Fair are in yet another category. A violation of the disputed rules triggers no criminal liability and no civil monetary penalty; the only sanction for violating rules of the Fair is ejection from the Fair. Criminal penalties might apply only if an ejected person commits a separate offense of trespass after receiving clear notice of his ejection. Although a more stringent vagueness test applies when a statute interferes with the right of free speech, *id.* at 499, and the doctrine has been employed to invalidate non-penal regulations that resulted in the loss of employment, *see Keyishian v. Board of Regents of University of State of New York*, 385 U.S. 589, 603-04 (1967), it is not clear how the doctrine applies to rules, like those of the State Fair, that prescribe such a modest consequence for a violation. *See Milestone v. City of Monroe*, 665 F.3d 774, 785 (7th Cir. 2011).

Whatever level of precision might be required for Fair rules to satisfy due process, however, Powell is not likely to succeed on his claim. Powell seeks to carry signs on poles and to display them while standing on sidewalks outside entrances to the Fairgrounds. He complains that he could not have known about the rules before he was directed to discontinue his activities in 2013. But Powell seeks prospective injunctive relief, and the relevant question is whether he now has fair notice of the rules. During the 2013 Fair and in this litigation, the State has given Powell clear notice of the rules against impeding traffic and carrying signs on poles and sticks.

-5-

These rules prohibit Powell's proposed conduct.  "[A] plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause of the [Fourteenth] Amendment for lack of notice.  And he certainly cannot do so based on the speech of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010).

Powell argues that the terms of the rules are insufficiently clear to satisfy the requirement of due process.  But "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).  The phrase "impeding traffic" and the phrase "sign . . . attached to . . . pole or stick" are not indeterminate.  A person of ordinary intelligence in Powell's position is on fair notice that standing continuously on a sidewalk that is a thoroughfare for pedestrian traffic outside a busy Fairgrounds is contrary to a rule against impeding traffic.  He is also well informed that carrying a sign on a pole violates a rule against carrying signs attached to sticks or poles.  The terms of the rules are clear in their application to Powell's proposed activities.

For similar reasons, Powell is not likely to succeed on a claim that the Fair's rules impermissibly encourage arbitrary and discriminatory enforcement.  Due process allows for the exercise of some degree of judgment in law enforcement. *Grayned*, 408 U.S. at 114.  The rules at issue are not standardless; they provide the requisite "minimal guidelines to govern law enforcement." *Goguen*, 415 U.S. at 574; *Grayned*, 408 U.S. at 113 n.22.  Powell hypothesizes that patrol officers might arbitrarily remove him from standing on a sidewalk to display signs and speak with pedestrians while allowing other Fairgoers to pause on a sidewalk to talk on a cellular telephone or consult a map.  He complains that he is banned from displaying a sign affixed to a pole or stick outside the Fair while visitors are permitted to purchase and carry food on a stick within the Fairgrounds.  These are not examples of discriminatory enforcement of the rules but rather pragmatic applications of the standards to disparate circumstances.  Powell presented no evidence that the Fair

-6-

authorities have discriminated in favor of others who are similarly situated to him based on viewpoint or other impermissible criterion.

Powell cites two circuit precedents that warrant discussion.  In *Stahl v. City of St. Louis*, 687 F.3d 1038 (8th Cir. 2012), the court held unconstitutionally vague a criminal ordinance that forbade the display of signs "in consequence[] of which there is such a gathering of persons or stopping of vehicles as to impede either pedestrians or vehicular traffic." *Id.* at 1039.  The court ruled that the ordinance failed to give fair notice to a citizen who wished to display a sign on a highway overpass, because a violation depended on the reactions of third parties traveling below the overpass.  As a result, the person displaying a sign could not know in advance whether the display would constitute a violation.  The rules of the Fair as applied to Powell do not present the same concern.  A person standing continuously on a sidewalk used for pedestrian traffic outside an entrance to the Fairgrounds is on fair notice that he could be cited for impeding traffic.  If Stahl had been standing in the highway rather than on an overpass, then his case would have been quite different.

Powell also complains that the Fair's rules are impermissibly vague because they are unwritten and not made explicit by well-established practice.  He relies on a sentence from *Families Achieving Independence & Respect v. Nebraska Department of Social Services*, 111 F.3d 1408 (8th Cir. 1997) (en banc), where the court stated that "[s]o long as a policy is made explicit by 'well-established practice,' the fact that a policy is not committed to writing does not of itself constitute a First Amendment violation." *Id.* at 1415 (internal citations and brackets omitted).  The quoted sentence does not state a requirement of constitutional due process.  It discusses whether an unwritten rule violates *the First Amendment*, and the authorities cited in support address whether a licensing statute constitutes a prior restraint on speech by giving unbridled discretion to government officials.  *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 (1988); *Lebron v. Nat'l R.R. Passenger Corp. (Amtrak)*, 69 F.3d 650, 658 (2d Cir. 1995).  As discussed, the unwritten rules of the

-7-

State Fair do not provide standardless discretion to enforcement personnel. That the rules are unwritten does not deprive Powell of fair notice prospectively, because he is now on clear notice that impeding traffic and carrying signs attached to a pole or stick is prohibited.

We also agree with the district court that Powell failed to show that he was likely to suffer irreparable harm. The loss of First Amendment freedoms constitutes irreparable injury, *see Johnson v. Minneapolis Park & Recreation Board*, 729 F.3d 1094, 1101-02 (8th Cir. 2013), but the State Fair rules impose no such threat. This court concluded that enforcement of the rules is not likely to infringe on Powell's right to freedom of speech, and there is no vagueness in the rules that is likely to chill protected speech that is outside the scope of the rules.

Powell's failure to show a likelihood of irreparable harm or a reasonable probability of success on the merits was sufficient reason for the district court to deny injunctive relief, so it is unnecessary to address other factors. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21-22 (2008); *Munaf v. Geren*, 553 U.S. 674, 690 (2008). The district court also thought that its local rules and the rule against raising issues for the first time in a reply brief "support denying" Powell's due process claim. But it is not clear whether the court definitively ruled that Powell's claim was waived, and we need not address the point in any event, because we have considered Powell's appeal on the merits. The order of the district court is affirmed.

SHEPHERD, Circuit Judge, concurring.

Respectfully, I do not share the majority's doubt as to the merits of Powell's due process claim. I would instead hold that Powell has a reasonable probability of success on that claim. But I agree with the majority that Powell has failed to show irreparable harm, and I therefore concur in the judgment affirming the denial of preliminary injunctive relief.

-8-

I.

The demands of due process vary according to the nature of the challenged law. See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982).  More clarity is required of laws that "threaten[] to inhibit the exercise of constitutionally protected rights" and also of laws that impose "criminal penalties[,] because the consequences of imprecision are qualitatively [more] severe." Id. at 498-99.

According to the majority, the Fair policies "trigger[] no criminal liability" because "the only sanction for violating rules of the Fair is ejection from the Fair." I disagree.  Though the policies are not codified criminal ordinances as in Stahl v. City of St. Louis, 687 F.3d 1038 (8th Cir. 2012), they are at least quasi-criminal given that Powell would not have faced arrest but for first being ejected for violating the policies.  Criminal consequences are therefore rooted in noncompliance with the policies and are not unearthed merely because Powell would have had to return to the Fair to be arrested.  Further, civil and regulatory laws may be quasi-criminal for purposes of the vagueness doctrine without directly imposing criminal penalties. Vill. of Hoffman, 455 U.S. at 499, 499 n.16 (labeling as "quasi-criminal" and applying a strict vagueness analysis to a licensing ordinance for businesses that sell products designed to be used with illegal drugs); see also Women's Med. Ctr. of Nw. Hous. v. Bell, 248 F.3d 411, 422 (5th Cir. 2001) (applying a heightened vagueness test to a licensing regulation for medical offices that provide abortions because penalties such as substantial fines and license revocation render the law quasi-criminal); United States v. Clinical Leasing Serv., Inc., 925 F.2d 120, 122 (5th Cir. 1991) (applying a more exacting vagueness test to a federal civil statute requiring registration of manufacturers of controlled substances because the "prohibitory effect is quasi-criminal").  I would therefore hold that the Fair policies, though not outright threats to liberty, are at least quasi-criminal.  Due process accordingly requires more precision of the Fair rules than of rules that do not threaten criminal punishment.

II.

Turning to the merits of the due process claim, I find no basis in the record or law to conclude that the Fair policies, unwritten and apparently non-existent prior to Powell's trip to the Fair, satisfy the demands of due process.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). A law must give ordinary people fair notice of what conduct it forbids, and it must offer "explicit standards" for those who enforce it. Id. It follows that, where lawmakers create an unwritten rule, the public must receive notice of the rule by some alternative means. Powell suggests that an unwritten rule is effectively divulged to the public when it is "made explicit by well-established practice," i.e., the rule has a history of consistent and uniform application. He relies on Families Achieving Independence & Respect v. Nebraska Department of Social Services, where the court stated, "So long as a policy is made explicit by 'well-established practice,' [t]he fact that a policy is not committed to writing does not of itself constitute a First Amendment violation." 111 F.3d 1408, 1415 (8th Cir. 1997) (en banc) (alteration in original) (citation omitted) (quoting Lebron v. Nat'l R.R. Passenger Corp., 69 F.3d 650, 658 (2d Cir. 1995)).

The majority rejects Powell's position, stating that the quoted language in FAIR "discusses whether an unwritten rule violates *the First Amendment*," not due process. But in Powell I, our court relied on the same quoted language to remand for consideration of whether the unwritten policies violate Powell's *due process* rights. Powell v. Noble, 798 F.3d 690, 703-04 (8th Cir. 2015). Moreover, the quoted sentence in FAIR was part of a broader discussion of the vagueness doctrine, a concept that is as entrenched (if not more) in due process as it is in the First Amendment. See Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men

-10-

of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."). Thus, while <u>FAIR</u> uttered its "well-established practice" requirement in the context of a First Amendment vagueness challenge, it did not foreclose imposing the same requirement when a party brings a vagueness challenge on the grounds of due process.

The disagreement over <u>FAIR</u> is largely academic; in my view, the record shows no previous application of the policies that would notify Fairgoers in advance of the Fair's unwritten rules. The only evidence on this issue is the testimony of Iowa State Fair Patrol Officer Rhonda Hummel, who participated in ejecting Powell from the Fairgrounds. When asked whether Powell was the first individual to be removed from the area, Officer Hummel replied, "No. We've had other incidents where we've asked people to go across the street [because they were impeding pedestrian traffic]." R. Doc. 23, at 20-21. Hummel's faint account, without more, does not show that the pedestrian traffic rule has been applied in any manner giving fair notice of its prohibitions.

The record in fact suggests that the Fair's rules on traffic and signs were broadcast during this litigation in an attempt to retroactively validate Appellees' treatment of Powell. In apprehending and ejecting Powell, officials did not identify either of the relevant policies, despite Powell's repeated requests for an explanation as to the nature of his infraction. In the first incident, which the officer involved described as lasting "no more than half a minute," Powell was merely told that he must leave the Fair's property. R. Doc. 12-2, at 2-3. Similarly, the officer involved in the second incident stated, "I just told him that he needed to move on off the [Fair]grounds because being inside the area where he was at, he was on the [Fair]grounds." R. Doc. 23, at 34. This testimony indicates that, contrary to Appellees' position, officials were not knowingly enforcing rules about traffic flow and signs on sticks when they ejected Powell. Indeed, one official testified that there

-11-

was no concern about the pole attached to Powell's sign when he was ejected.  R. Doc. 23, at 35.

The lack of articulated prior application of these policies, as well as Appellees' suspect attempt to validate Powell's removal after the fact, leads me to conclude that Powell did not have fair notice of the unwritten policies as required by due process. The record also does not show that Appellees have adopted any "explicit standards" to assure fair enforcement of their policies.  Grayned, 408 U.S. at 108.  I would therefore hold that Powell has a reasonable probability of success on his due process claim.

III.

Though I do not join the majority as to the previous matter, I agree that Powell has not shown irreparable harm.  "[T]he absence of a finding of irreparable injury is alone sufficient ground for vacating the preliminary injunction." Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 n.9 (8th Cir. 1981) (en banc).  To establish irreparable harm, Powell must show that "the harm is certain and great and of such imminence that there is a clear and present need for equitable relief."  E.g., Roudachevski v. All-Am. Care Ctrs., Inc., 648 F.3d 701, 706 (8th Cir. 2011) (internal quotation marks omitted).

Powell would suffer irreparable harm if the Fair policies were likely to chill protected speech. E.g., Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion). They are not, however, because we have already concluded that the Fair policies probably do not threaten Powell's First Amendment rights.  Powell I, 798 F.3d at 702. Powell argues that we should not allow our disposition of his First Amendment claim to impact our approach to his due process claim because the claims are independent. While free speech and due process are, indeed, separate constitutional guarantees, in this case the two are inextricably linked by Powell's own assertion that the alleged

-12-

due process violation chills his speech.  Thus, to the extent that Powell raises chilled speech as an injury resulting from the loss of due process, there is no basis for finding irreparable harm.

In his brief, Powell also proposes that the loss of due process, like the loss of a First Amendment freedom, is itself sufficient to establish irreparable harm. Notably, Powell cites no authority supporting his interpretation, likely because most courts to consider the issue conclude the opposite.  Pub. Serv. Co. of N.H. v. Town of W. Newbury, 835 F.2d 380, 382 (1st Cir. 1987) ("The alleged denial of procedural due process, without more, does not automatically trigger . . . a finding [of irreparable injury]."); Bauman v. Twp. of Tittabawassee, No. 14-cv-12841, 2014 WL 5499285, at *4 (E.D. Mich. Oct. 30, 2014) ("[T]he [c]ourt is not aware of[] any case where the threat of a [sic] violating a substantive due process right was considered irreparable harm . . . ."); Barrett v. Harwood, 967 F. Supp. 744, 746 (N.D.N.Y. 1997) ("[T]he cases where courts have held that a constitutional deprivation amounts to an irreparable harm are almost entirely restricted to cases involving alleged infringements of free speech, association, privacy, or other rights as to which temporary deprivation is viewed of such qualitative importance as to be irremediable by any subsequent relief.") (internal quotation marks omitted).  Accordingly, I conclude that Powell's alleged due process violation alone cannot support a finding of irreparable harm, and Powell is therefore not entitled to a preliminary injunction.

## IV.

In sum, I respectfully disagree with the majority's conclusion as to the merits of the due process claim and would instead hold that Powell has a reasonable probability of success on that claim.  I nonetheless concur in the judgment to affirm the district court on the ground that Powell will not suffer irreparable harm in the absence of injunctive relief.

_____

-13-